1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   HELEN VINCENT,

8                          Plaintiff,            NO:  10-CV-0347-TOR

9        v.                                      ORDER GRANTING IN PART AND
                                                 DENYING IN PART DEFENDANT'S
10  BNSF RAILWAY COMPANY,                        MOTION FOR SUMMARY
                                                 JUDGMENT
11                         Defendant.

12        BEFORE THE COURT is Defendant's Motion for Summary Judgment

13  (ECF No. 104).  This matter was heard without oral argument on October 29,

14  2012.  The Court has reviewed the relevant pleadings and supporting materials,

15  and is fully informed.

16                              BACKGROUND

17        On September 16, 2010 Plaintiff Helen Vincent ("Vincent") filed a

18  Complaint in Spokane County Superior Court against BNSF Railway Company

19  ("BNSF"). The complaint alleged violations of the Americans with Disabilities Act

20  ("ADA") and the Washington Law against Discrimination ("WLAD") for failing

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 1

to accommodate her disability and retaliation for requesting accommodations;

violation of Title VII and the WLAD for sex discrimination; negligent infliction of

emotional distress, intentional infliction of emotional distress, breach of implied

covenant of good faith, and wrongful failure to hire.  On October 8, 2010, the case

was removed to the Eastern District of Washington.  Presently before the Court is

BNSF's motion for summary judgment on all claims.

FACTS

Vincent was hired by BNSF as a mechanical laborer in August 2004.  ECF

No. 108 at 1.  On July 10, 2005, Vincent suffered an injury to her right elbow

while working for BNSF.  Statement of Material Facts in Support of Defendant

BNSF Railway Company's Motion for Summary Judgment, ECF No. 107 ("Def.

SOF") at ¶ 1.  BNSF placed Vincent on light duty for several months.  *Id*. at ¶ 2.

The light duty was intended to be temporary, and made in two-week intervals, but

even with continued treatment, Vincent was not able to perform her normal duties.

*Id*. at ¶ 3, 5.  In February of 2006 Vincent returned to full duty for a brief period

but it aggravated her injury and her physician took her off work entirely.  *Id*. ¶ 6.

Vincent was never fully medically released to work at her original position.  *Id*. at

¶ 7. On August 22, 2006, BNSF sent Vincent a letter indicating the potential for

reassignment to an Inspection Officer position.  *Id*. at ¶ 8.  The letter stated that

Vincent's acceptance would "initiate the application process," however Vincent

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 2

would have to complete a background check and interview before she could start the job. Plaintiff's Response to BNSF's Statement of Material Facts in Support of its Motion for Summary Judgment ECF No. 162 ("Pl. Response") at ¶ 8. Circumstances surrounding the "offer" of the Inspection Officer position are heavily debated by the parties, but Vincent did not accept the offer to "initiate the process" for the Inspection Officer position. Approximately two months after this "offer" Vincent's attorneys directed that no one from BNSF have any direct contact with Vincent. Def. SOF ¶ at 10.

Despite surgery in October 2008, Vincent has a permanent restriction on her right arm to lifting five pounds and no repetitive use. Pl. Response at ¶ 7. In May of 2009, Vincent's Federal Employers Liability Act ("FELA") lawsuit was tried against BNSF in the Montana Thirteenth Judicial District Court in Yellowstone County. See ECF No. 161-6. After the trial concluded, Vincent sent a letter dated May 28, 2009, asking for accommodations for her disability and to allow her to return to work. ECF No. 177-12 at 0183. On August 6, 2009, letters were sent to several male BNSF employees indicating that van driver positions were available. ECF No. 161-7. Vincent sent a letter on August 10, 2009, expressing interest in

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 3

the van driver position, despite the fact that she did not receive the same letter.[1] ECF No. 177-12 at 0207-208.

During the time she was not working, Vincent submitted many job applications, including through WorkSource, the internet, and via telephone inquiries.  Pl. Response ¶ 11.  At one point she was offered a job with Comcast but she expressed concern about going door-to-door at stranger's homes while only making commission, and she declined the position.  *Id.* at ¶ 12.  Vincent stopped aggressively seeking employment at the end of 2009 and since January 2010 has not submitted job applications outside of BNSF.  Def. SOF at ¶ 13.  However, Vincent testified that she has continued to explore job opportunities within BNSF to the best of her ability. Pl Response ¶ 13.  She has also looked online for postings at least three times since January 2010, registered with the State Job Service, worked with a vocational counselor, and read want ads.  Vincent Aff., ECF No. 186 at ¶¶ 14-18.

A reasonable cause determination was issued by the EEOC on April 30, 2010, finding that BNSF failed to engage in the interactive process and failed to provide reasonable accommodations; and that Vincent was subjected to less favorable terms and conditions of employment because of her sex, disability, and

---

[1] Vincent knew about the August 6, 2009, letter because it was sent to a BNSF employee that was living with Vincent at the time.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

1    in retaliation for requesting reasonable accommodations. ECF No. 161-8.  The

2    instant lawsuit was filed in September 2010.  ECF No. 1.

3                                          DISCUSSION

4            The Court may grant summary judgment in favor of a moving party who

5    demonstrates "that there is no genuine dispute as to any material fact and that the

6    movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

7    on a motion for summary judgment, the court must only consider admissible

8    evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The

9    party moving for summary judgment bears the initial burden of showing the

10   absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

11   317, 323 (1986).  The burden then shifts to the non-moving party to identify

12   specific facts showing there is a genuine issue of material fact.  *See Anderson v.*

13   *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

14   of evidence in support of the plaintiff's position will be insufficient; there must be

15   evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

16           For purposes of summary judgment, a fact is "material" if it might affect the

17   outcome of the suit under the governing law.  *Id.* at 248.  Further, a material fact is

18   "genuine" only where the evidence is such that a reasonable jury could find in

19   favor of the non-moving party.  *Id.*  The court views the facts, and all rational

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 5

inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 327, 378 (2007).

### A. ADA and WLAD Failure to Accommodate

Under the ADA, no employer "shall discriminate against a qualified individual on the basis of a disability."  42 U.S.C. § 12112(a).  Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability." 42 U.S.C. § 12112(b)(5)(A).  Thus, to state a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that "(1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job she holds or seeks; and (3) that she suffered an adverse employment action because of her disability." *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000). The WLAD and the federal ADA have the same purpose; thus, Washington courts look to federal cases for guidance.  *MacSuga v. County of Spokane*, 97 Wash. App. 435, 442 (1999) (*citing Fahn v. Cowlitz County*, 93 Wash.2d 368, 376 (1980)).

As an initial matter, the Court notes that Vincent bases her ADA claims on conduct primarily occurring prior to the January 1, 2009 effective date of ADA amendments.  The Ninth Circuit has held that these amendments do not have retroactive application. *See Becerril v. Pima Cnty. Assessor's Office*, 587 F.3d

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 6

1162, 1164 (9th Cir. 2009).  Thus, the Court will analyze Vincent's claims without regard to those amendments.

      1.  <u>Disability under the ADA</u>[2]

      The ADA defines "disability," in pertinent part,[3] as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. § 12112(1).  Thus, the analysis of whether a person is disabled under the ADA is a three part test: (1) does the individual have a physical or mental impairment; (2) does the impairment limit one or more major life activities; and (3) is the limitation on the major life activity substantial.  *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).  Whether a person is disabled under the ADA is an individualized inquiry.  *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 794 (9th Cir. 2001); see also *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002) ("Congress intended the existence of a disability to be determined in such a case-by-case manner").  For the purposes of the present motion BNSF appears to concede that Vincent has an impairment.  In

_____

[2] The definition of "disability" is different under the WLAD.  See Wash. Rev. Code § 49.60.040.  BNSF does not appear to challenge whether Vincent had a "disability" under the WLAD, thus the Court declines to address the issue.

[3] The Court will limit its analysis to this discrete subsection of the ADA definition of disability, as this is the only subsection discussed by the parties.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

addition, the parties do not dispute whether "lifting" constitutes a major life

activity. Thus, the only question for the Court is whether there is a genuine issue of

fact as to whether Vincent's impairment has substantially limited the major life

activity of lifting.

According to EEOC regulations, an impairment is a disability "if it

substantially limits the ability of an individual to perform a major life activity as

compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1).

The determination of whether an impairment is substantially limiting includes

considerations such as the nature and severity of the impairment, the duration or

expected duration of the impairment, and the permanent or long term impact of the

impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii).  Based on these considerations the

Supreme Court held that "to be substantially limited in performing manual tasks,

an individual must have an impairment that prevents or severely restricts the

individual from doing activities that are of central importance to most people's

daily lives" and the "impairment's impact must also be permanent or long term."

*Toyota Motor Mfg.*, 534 U.S. at 198 (noting it is not sufficient to submit medical

diagnosis as proof of disability status, instead, claimant must offer evidence that

the extent of the limitation in their own experience is substantial).  Further, the

Court found that this inquiry should not extend to whether a claimant is able to

perform tasks associated with her specific job. *See id*. at 200-201.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 8

1    BNSF challenges whether the major life activity of "lifting" has been

2  substantially limited by Vincent's injury to her right arm.  BNSF relies on a Ninth

3  Circuit decision that acknowledged "lifting" was within the statutory definition of

4  a "major life activity," but found as a matter of law that a lifting restriction of 25

5  pounds was not, in and of itself, "substantially limiting" under the ADA.[4]

6  *Thompson v. Holy Family Hosp.*, 121 F.3d 537 (9th Cir. 1997).  Further, BNSF

7  identifies non-binding case law from other districts holding that ten pound lifting

8  limitations did not substantially limit a major life activity. *See e.g., Ray v. Glidden*

9  *Co.*, 85 F.3d 227, 229 (5th Cir. 1996) ( five to ten pound lifting restriction did not

10  substantially limit a major life activity because plaintiff could still lift as long as he

11  avoided "heavy" lifting); *Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1207

12  (8th Cir. 1997), *abrogated on other grounds by Togerson v. City of Rochester*, 643

13  F.3d 1031 (8th Cir. 2011) ("a general restriction on lifting imposed by a physician,

14  without more, is insufficient to constitute a disability within the meaning of the

---

[4] BNSF cites *Thompson* in its opening brief for the proposition that a lifting

restriction does not constitute a disability if it does not disqualify an individual

from a broad range of jobs. *See Thompson*, 121 F.3d at 540.  However, in

*Thompson* the court applied this reasoning only in its analysis of the major life

activity of "working," as opposed to the major life activity of "lifting."  Thus, the

Court declines to consider this argument.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 9

ADA.").  BNSF contends that Vincent only has a single-arm lifting limitation of 10 pounds and offers no evidence to establish that she is unable to perform a variety of tasks central to people's daily lives.  ECF No. 188 at 2-3.

Vincent responds that the *Thompson* case is distinguishable because her lifting limitations are more restrictive. *See Thompson*, 121 F.3d at 539-40 (holding as a matter of law it was not substantially limiting to be restricted from lifting more than 25 pounds on a continuous basis, more than 50 pounds twice a day, and more than 100 pounds once a day….") In contrast, by August of 2006 Vincent was restricted to lifting 10 pounds occasionally with no repetitive use of her right elbow and no right hand pushing or pulling against resistance.  ECF No. 161-6 at 00169-170.  Those same restrictions were in place from 2007-2008, and after surgery in October 2008, Vincent was permanently restricted from lifting more than 5 pounds with her right arm and from using it in repetitive motions.  ECF No. 106-1 at 27. Vincent testified that these lifting restrictions have "affected" her ability to perform activities of daily life such as yard work and household chores that involve carrying more than five pounds. *Id*. at 44.  She also testified that she has been "serious problems lifting with [her] right arm" which "interferes with many activities" including limiting her ability to work in many jobs, and limiting activities such as waterskiing, golfing, volleyball, basketball, bowling, raking, gardening, shoveling, vacuuming, mopping, scrubbing the bathroom especially the

tub, lifting dishes out of the dishwasher and putting them in the cupboard, garbage removal, carrying laundry, loading and unloading groceries, blow-drying hair, getting in and out of the bathtub because [she] can't support herself with [her] elbow, driving stick shift vehicles, and playing with and changing her grandchildren. Vincent Aff., ECF No. 186 ¶ 22.  She also testified that she has hired people to clean windows and paint, and has restricted her ability to help care for her husband who is undergoing cancer treatment. *Id*.

The Ninth Circuit has held that at the summary judgment stage, a plaintiff's testimony may suffice to establish a genuine issue of material fact as to whether a major life activity has been substantially limited by an impairment, but it "must not be merely self-serving and it must contain sufficient detail." *Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1058-59 (9th Cir. 2005) (comparative or medical evidence is not required).  Vincent has come forward with sufficient evidence to establish a genuine issue of material fact as to whether a major life activity has been substantially limited by her impairment.  A reasonable fact finder could find that the major life activity of "lifting" was substantially limited by Vincent's right arm injury.

2.  Reasonable Accommodation

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

The ADA protects "qualified individuals" from discrimination on the basis of a disability. See 42 U.S.C. § 12112(a).  A "qualified individual" is "an individual who, without or without reasonable accommodation, can perform the essential functions of the employment position."  See 42 U.S.C. § 12111(8).  An individual is not required to accept an accommodation offered by an employer, however, "if such individual rejects a reasonable accommodation, … that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual *will not be considered qualified*."  29 C.F.R. § 1630.9(d)(emphasis added).

The ADA requires employers to engage in a good-faith interactive process with employees to identify and implement appropriate reasonable accommodations.  29 C.F.R. § 1630.2(o)(3).  The interactive process also requires employers to analyze job functions and establish essential and nonessential job functions, and cooperate with the employee to discover the types of accommodation that would be most effective.  *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1115 (9th Cir. 2000) (en banc), *vacated on other grounds by* 535 U.S. 391 (2002) (neither side can delay or obstruct the process).  Primary consideration should be given to the expressed choice of the applicant "unless another effective accommodation exists that would provide a meaningful equal employment

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

opportunity." *Barnett*, 228 F.3d at 1115.  The Ninth Circuit has held that the duty

to accommodate "is a 'continuing' duty that is 'not exhausted by one effort.'"

*McAlindin v. County of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 1999).

However, an "employer is not obligated to provide an employee the

accommodation he requests or prefers, the employer need only provide some

reasonable accommodation."  *Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d

1080, 1089 (9th Cir. 2002).  Whether an accommodation is reasonable turns on the

facts of the case. *McAlindin*, 192 F.3d at 1238.  Reassignment may be a reasonable

accommodation if the employee can perform the essential functions of the position,

with or without accommodation. *See Dark v. Curry County*, 451 F.3d 1078, 1089

(9th Cir. 2006).

BNSF relies primarily on one unpublished Ninth Circuit case and non-

binding case law from other circuits to support its argument that Vincent lost her

status as a "qualified individual" when she rejected BNSF's offer of the Inspection

Officer position.  *See Reza v. International Game Technology*, 351 Fed. App'x

188, 190 (9th Cir. 2009) (holding plaintiff's rejection of a reasonable

accommodation meant she was no longer a qualified individual under the ADA);

*see also Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 457-58 (6th Cir.

2004) (affirming summary judgment based on rejection of reasonable

accommodation even though it was unclear if position was formally offered to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 13

plaintiff, because employee testified that she understood the job was hers if she wanted it but refused to take the position because of the pay); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1177 (10th Cir. 1999) ("[i]f the disabled individual rejects [the] reassignment, the employer is under no obligation to continue offering other reassignments…. Once the employer has offered a [reasonable accommodation], its duties have been discharged.").  BNSF argues that it accommodated Vincent by placing her on light duty for eight months until her physicians removed her from light duty, and when she was not cleared to return to full duty at her regular position, BNSF offered Vincent the position of Inspection Officer on August 22, 2006. ECF No. 106-2.  Her "rejection" of this job offer, according to BNSF, results in Vincent losing her status under the ADA as a qualified individual.  Vincent raises several arguments in response.

First, Vincent argues that there is a genuine issue as to whether the proposed accommodation of Inspection Officer was a reasonable reassignment with essential functions that Vincent could actually perform.  The essential functions of the Inspection Officer position must have accommodated her restriction from lifting 10 pounds occasionally with no repetitive use of her right elbow or right hand pushing or pulling against resistance.  ECF No. 161-6 at 00170.  Vincent testified that she was concerned about whether the job would accommodate her physical restriction. ECF No. 106-1 at 23.  Moreover, Vincent argues that BNSF did not evaluate or

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

conduct a job analysis to determine whether the Inspection Officer position would accommodate Vincent's restriction on lifting, repetitive motions, and pushing or pulling against resistance (such as opening large gates).  ECF No. 161-5 at 00054-55.  Vincent also contends that the Inspection Officer was under a "light classification" which would presumably be a higher activity job than the sedentary classification under which an employee would still have to exert up to 10 pounds of force occasionally. ECF No. 161-5 at 00070-71.  BNSF responds that, despite Vincent's "speculative" concerns about the duties of the Inspection Officer, the evidence establishes that Vincent could have performed the essential functions of the Inspection Officer position.  BNSF points to testimony regarding the letter sent to Ms. Vincent offering her the Inspection Officer position that, while it does not list essential job functions, "says at the bottom you have to be able to operate a company vehicle and use a cell phone." ECF No. 161-6 at 00140.  According to BNSF, Vincent was offered this position because it required no lifting.  *Id*. Further, according to BNSF, the position could be modified to meet each individual's limitations.  Dryer Decl., ECF No. 173 at ¶ 3, ¶¶ 5-6.

Second, Vincent argues that good faith by BNSF is "questionable" in this case because (1) the letter indicates that the letter is an "offer" but later states that Vincent's acceptance will only "initiate the application process"; and (2) Vincent was told that the position could be eliminated at any time. ECF No. 106-1at 23.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1  Vincent contends that the job offer was not "meaningful" because it must be

2  specially created for employees injured on the job, and has been held by the same

3  employee for two and a half years before November of 2010.  ECF No. 161-6 at

4  00137-38.  Thus, Vincent argues that "BNSF had no intention to open up the job to

5  other employees by promoting the incumbent or otherwise opening up the job."

6  ECF No. 177-3.  Moreover, Vincent contends that the job was not a sure thing, and

7  the letter was merely an offer to initiate the application process. ECF No. 177-11 at

8  161-62; ECF No. 106-2.  Vincent also argues that she did not reject the position;

9  rather, she told BNSF that she was interested in the position and asked BNSF to

10  address her concerns.  ECF No. 161-5 at 00063.  Vincent testified that she had

11  conversations with Ms. Stevens from BNSF about those concerns but after several

12  conversations BNSF "never got back to [her] … about dealing with those issues

13  [she] had." ECF No. 106-1 at 24-25.[5]  BNSF responds that the offer of the

14  [5] Vincent also argues that BNSF never indicated that the "interactive

15  accommodation process" was over, and communicated with her throughout 2007

16  and 2008, even writing her about accommodation as recently as 2011. ECF No.

17  161-9; 161-10; 161-11. Thus, Vincent asks the court to find that BNSF's

18  continuing conversation estops it from maintaining that the interactive process

19  ended. ECF No. 160 at 10.  The Court is puzzled by Vincent's argument that

20  BNSF should be estopped from claiming that the interactive process ended,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 16

Inspection Officer position was bona fide and would have been Vincent's if she

passed the background check and participated in the interview to ensure she

understood the job duties.  ECF No. 161-6 at 00174.  Further, BNSF argues that it

acted in good faith because BNSF field manager Ashley Stevens spoke to Vincent

about the position to make sure the job duties were within her limitations and

offered to put her in touch with a person who held the Inspection Officer position

to answer her questions.  *Id*. at 00174, 00196.  BNSF has offered this position to

other injured employees who have accepted and held the Inspection Officer

position.  *Id*. at 00177.

As to Vincent's first argument, the Court finds that she has raised a triable

issue of fact as to the circumstances surrounding BNSF's offer of the Inspection

Officer position, as well as exactly what the essential functions of the van driver

job entailed and whether she would be able to perform those duties.  The letter

offering Vincent this position notes that part of her responsibilities would be

checking for "proper function of security structures and devices such as gates,

fences, locks…." ECF No. 106-2.  However, BNSF failed to provide evidence of

---

especially in light of BNSF's concession that they did continue to communicate

with Vincent. ECF No. 171 at 8.  In any event, the Court finds this argument is

unpersuasive and irrelevant to the circumstances surrounding the offer of the

Inspection position in 2006.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 17

1    the essential functions of the Inspection Officer position; including specific lifting,

2    repetitive motion, and pushing and pulling restrictions.  Despite BNSF's insistence

3    that the job could be tailored to accommodate Vincent's particular injuries, this

4    flexibility was not affirmatively stated in the letter "offering" her the position.

5    ECF No. 106-2.  The failure to provide exact essential functions of the Inspection

6    Officer position would make it very difficult for Vincent or her physician to fairly

7    evaluate whether she could perform the essential functions of the position.

8         Moreover, the Ninth Circuit has held that an employer cannot prevail at

9    summary judgment if there is a genuine dispute as to whether the employer

10   engaged in good faith in the interactive process.  *Barnett*, 228 F.3d at 1115.  The

11   Court agrees with BNSF that Vincent cites no case law to support her argument

12   that BNSF did not act in good faith by not attempting to secure union status for the

13   Inspector Officer position.  An employer is only obligated to provide a disabled

14   employee with "reasonable accommodation," not any accommodation he or she

15   requests. See *Zivkovic*, 302 F.3d at 1089.  Also, the Court finds Vincent's

16   argument regarding the availability of the Inspection Officer position from 2007-

17   2010, well after the 2006 offer to Vincent, to be irrelevant as to whether the

18   position was offered as part of the good faith interactive process.

19        That said, the Court finds there are genuine issues of fact as to whether both

20   sides participated in good faith in the interactive process and whether the "offer" of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 18

the Inspection Officer to Vincent was really a "meaningful," and therefore

"reasonable" accommodation.  *See Barnett*, 228 F.3d at 1115.  The offer letter

itself indicates that Vincent's acceptance would initiate the application process,

and while BNSF testified that she would have been given the job if she passed the

background check and participated in the interview, there is no evidence in the

record that this information was effectively communicated to Vincent.  There is

great dispute as to who failed to follow up in the "interactive process" to determine

whether Vincent would accept the Inspector Officer position, as well as the extent

to which BNSF addressed concerns that Vincent had about the position.  Vincent

indicates that she expressed interest but her concerns were not addressed.  BNSF

offers conflicting evidence that Ms. Stevens spoke with Vincent about the job

duties and even connected Vincent with an Inspection Officer to answer her

questions.  For all of these reasons, the Court cannot find, as a matter of law, that

Vincent lost her status as a "qualified individual" under the ADA by allegedly

rejecting the Inspection Officer position.

**B. Title VII and WLAD Sex Discrimination**

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an

employer "to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment" because of the individual's sex.

42 U.S.C. § 2000e-2(a)(1).  Similarly it is unfair practice under the WLAD to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 19

discriminate against any person in the terms and conditions of employment because of such individual's sex.  Wash. Rev. Code § 49.60.180(3).  Title VII and WLAD claims for disparate treatment are both considered in the burden shifting analysis established by the Supreme Court.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973); *see also Domingo v. Boeing Employees' Credit Union*, 124 Wash. App. 71, 77 (2004).  First, under the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of discrimination.  *Chuang v. University of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000).  Specifically, plaintiff must show that he or she (1) belongs to the protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably.  *Id.*  Next, the burden of production shifts to defendant to articulate a legitimate nondiscriminatory reason for its decision.  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).  Finally, the burden shifts back to the plaintiff to demonstrate that the reason offered by the defendant is a pretext for an underlying discriminatory motive.  *Chuang*, 225 F.3d at 1123.

As a general rule, a "plaintiff in an employment discrimination case need produce very little evidence to in order to overcome an employer's motion for summary judgment" because the inquiry is best conducted by a factfinder, upon a full record.  *Id.*; *see also Kuyper v. State*, 79 Wash. App. 732, 739 (1995)

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 20

1  (summary judgment in favor of an employer in a discrimination case is often

2  inappropriate because evidence commonly "contain[s] reasonable but competing

3  inferences of both discrimination and nondiscrimination.").

4     1. Prima Facie Case

5     At the summary judgment stage a plaintiff's prima facie burden is minimal

6  and "does not even rise to the level of a preponderance of the evidence." *Wallis v.*

7  *J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (plaintiff only needs to offer

8  evidence that "gives rise to an inference of unlawful discrimination.").  BNSF

9  argues that Vincent cannot establish a prima facie case because she has no

10  evidence of a similarly situated male worker who rejected a job offered as

11  accommodation and was treated more favorably.  ECF No. 108 at 10.

12  Additionally, BNSF argues that it did not take adverse action against Vincent.

13  According to BNSF it reasonably accommodated Vincent by providing light duty

14  and offering her the Inspection Officer position (see discussion supra).

15     Vincent responds that the "adverse employment action" at issue was not

16  offering her the van driver positions.  ECF No. 161-7; ECF No. 106-1 at 31.  An

17  adverse employment action upon which a Title VII claim may be based includes a

18  significant change in employment status, such as "hiring, firing, failing to promote,

19  reassignment with significantly different responsibilities, or a decision causing a

20  significant change in benefits."  *Burlington Industries, Inc. v. Ellerth*, 524 U.S.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 21

742, 761 (1998).  The Court finds that evidence of letters sent to men indicating that the van driver position was available, but not contacting Vincent about the same job opportunity when she had previously expressed interest in the job, is sufficient to establish the prima facie element of an adverse employment action. While she is officially still a BNSF employee, offering her this job would have constituted a significant change in employment status because she would have been effectively "hired" into a new position with a presumably significant change in benefits.

In addition, Vincent argues that the EEOC reasonable cause determination that Vincent was subjected to "less favorable terms and conditions of employment because of her sex" is sufficient on its own to raise a genuine issue of fact.  *See Gifford v. Atchison, Topeka and Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 (9th Cir. 1982) (reversing summary judgment and finding the EEOC finding that there was reasonable cause to believe plaintiff was treated differently than similarly situated male employees was sufficient to create an issue of fact).  However, while the Court weighs this EEOC determination as highly probative evidence, it is not an automatic "free pass through summary judgment." *Mondero v. Salt River Project*, 400 F.3d 1207, 1215 (9th Cir. 2005).

Last Vincent argues that there is a genuine issue of material fact as to whether the men offered van driver jobs by BNSF were similarly situated.  Vincent

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

challenges BNSF's argument that Vincent is not similarly situated to these men
because there is no evidence that similarly situated men also "rejected" a previous
job offer.  As indicated supra, the Court has already found that there are genuine
issues of material fact as to whether Vincent "rejected" the Inspection Officer job.
Thus, it would be incongruous for the Court to require Vincent to support her
allegation that these men were similarly situated by proving that they also
"rejected" previous job offers.

The Ninth Circuit has found that "'[i]ndividuals are similarly situated when
they have similar jobs and display similar conduct.'  The employees need not be
identical; they must simply be similar 'in all material respects.'" *Nicholson v.*
*Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) (internal citations
omitted).  Whether two employees are similarly situated is ordinarily a question of
fact.  *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d
874, 885 n.5 (9th Cir. 2007).   Vincent offers evidence that at least two of the men
who received van driver job offers were from the same mechanical laborer craft as
Vincent and both those men similarly sustained injuries that required
accommodation.  ECF No. 106-1 at 34-35.  This evidence is sufficient to overcome
the minimal burden at the prima facie stage to show that Vincent and the men
offered the van driver positions were similar in all *material* respects.  *See*
*Nicholson*, 580 F.3d at 1125 (emphasis in original).  After considering all of the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 23

1    foregoing evidence, the Court finds that Vincent successfully established a prima

2    facie case of discrimination based on her sex.

3        2. <u>Legitimate Non-Discriminatory Reasons</u>

4        The burden now shifts to BNSF to rebut the inference of discrimination and

5    present evidence that the action taken was for legitimate non-discriminatory

6    reasons.  First, BNSF maintains that it no longer had a duty to accommodate

7    Vincent by offering her a van driver job after she "rejected" the Inspection Officer

8    position.  As discussed in detail above, the Court found triable issues of fact

9    surrounding the previous job offer. Therefore this argument is essentially neutral at

10   this stage, and the Court cannot rely on this evidence to find for either party as a

11   matter of law. Second, BNSF argues that it did not extend a job offer to Vincent

12   because at the time the position opened up she was not "working cooperatively"

13   with BNSF.  ECF No. 188 at 9.  A BNSF official, Ms. Stevens, had been instructed

14   by Vincent's counsel not to communicate with Vincent; and counsel for BNSF also

15   directed Ms. Stevens to forward all communication from Vincent to the BNSF

16   legal department instead of responding directly to Vincent.  ECF No. 190, Ex. 2,

17   Ex. 3, Ex. 4.  For the purposes of the motion for summary judgment, the Court

18   finds that by the slightest of margins BNSF articulates legitimate non-

19   discriminatory reasons for not offering the van driver position to Vincent.

20       3. <u>Pretext</u>

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 24

Pretext can be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Chuang*, 225 F.3d at 1124.  Evidence of pretext can be direct or circumstantial.  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1091 (9th Cir. 2008).  Ninth Circuit law often requires circumstantial evidence of pretext to be "specific" and "substantial".  *See e.g., Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).  However, as noted in *Davis*, while the Ninth Circuit often requires circumstantial evidence of pretext to be "specific" and "substantial," several Ninth Circuit decisions have questioned whether a lesser showing should suffice.  *Id.*; *see also Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1030 (9th Cir. 2006) (plaintiff in Title VII case who was relying on circumstantial evidence need not produce more, or better, evidence than a plaintiff who relied on direct evidence; *McGinest v. GTE Service Corp.*, 360 F.3d 1103 (9th Cir. 2004) ("circumstantial and direct evidence should be treated alike").  Regardless, a "plaintiff cannot create a genuine issue of pretext to survive a motion for summary judgment by relying solely on unsupported speculations and allegations of discriminatory intent." *Crawford v. MCI Worldcom Comm., Inc.*, 167 F.Supp. 2d 1128, 1135 (S.D. Cal. 2001).

First, Vincent attempts to persuade the Court that BNSF was more likely motivated by discriminatory reasons. *Chuang*, 225 F.3d at 1124.  As evidence of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

pretext, Vincent argues that BNSF told her in 2005 that the van driver jobs were being eliminated as people retired, yet in 2009 several van driver positions became available and BNSF offered them to four to six injured men as reasonable accommodations, but did not similarly inform Vincent of the position.  ECF No. 106-1 at 31.  These positions were sometimes held by outside contractors but could be un-contracted to make the position available for an injured employee.  ECF No. 177-2 at 21-23.  Vincent offers testimony that 15 positions had been uncontracted since 2004, but alleges that "it is unclear how many of these positions were uncontracted for females because the deponent claimed she forgot." ECF No. 176 at 8-9; ECF No. 177-4 at 6-19.  Vincent then argues that the decision to create a van driver job would normally be initiated by the medical management team after an injured employee expressed interest in working.  ECF No. 177-4 at 15; ECF No. 177-6 at 14.  In Vincent's case that person was Ms. Stevens, the same person who initially claimed in 2005 that the position was no longer going to be available. However, since that time two of the van driver jobs have been filled by males.[6] Vincent argues that Ms. Stevens could have contacted HR about uncontracting a van driver position for Vincent, "but did not like [she] did for males." ECF No. 176 at 9-10.  Vincent also contends that BNSF indicated that the position had to be

---

[6] The evidence does not indicate exactly when between 2005 and 2009 these positions were filled by men.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26

offered to people inside the craft first, however, the job was offered to five males outside the craft and a letter to one of the males indicates that BNSF could assist him in transferring crafts.[7] ECF No. 177-2 at 43-49; ECF No. 161-7.

Second, Vincent attempts to show that BNSF's proffered explanation for not hiring her is unworthy of credence and therefore pretextual. *Chuang*, 225 F.3d at 1124. Vincent argues that BNSF's explanation that it did not offer her the van driver position because she asked that communications from BNSF go through her attorney is pretextual because Ms. Stevens sent letters offering the job to male

---

[7] Vincent also argues that the medical case management team at BNSF includes being a patient advocate in the return to work process, and men were offered these services while Vincent was not. ECF No. 176 at 10. While Vincent offers evidence that the medical management team does, in fact, provide these services, she cites to no part of the record specifically indicating that male employees received these services and she did not. Vincent also offers the parallel argument that BNSF did not follow its own policy to forward Vincent's accommodation request (asking for the van driver position) to HR because of her FELA trial; instead, BNSF forwarded her requests to legal and prevented Ms. Stevens from attempting to accommodate her request. ECF No. 176 at 12-13. This argument is inapposite. Vincent offers no relevant argument or evidence that this policy was pretext for an underlying discriminatory motive.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 27

1   employees and copied their attorney (the same attorney representing Vincent) even

2   when at least one of those men was not actively seeking the van driver job.  ECF

3   No. 161-7; ECF No. 186 at ¶ 9.  Thus, Vincent contends that BNSF treated Vincent

4   differently by not communicating the job offer to her with an additional copy sent

5   to her attorney, as it did with the male employees. ECF No. 176 at 11-12.

6        BNSF insists that the parties' had been instructed by their attorney's not to

7   communicate directly with each other, and "Ms. Stevens did not send a letter

8   offering plaintiff a van driver position because plaintiff was not working

9   cooperatively with Ms. Stevens."  ECF No. 188 at 9.   But that begs the question,

10  "why didn't someone else at BNSF, with the proper authority to communicate with

11  Vincent, offer her a van driver position?"  Based solely on the record before the

12  Court on summary judgment, it is impossible to ignore the fact that, despite

13  Vincent's demonstrable interest in obtaining employment with BNSF, only injured

14  men were offered positions as van drivers, and only men held the van driver

15  position even after Vincent was informed that the position would no longer be

16  available.  The letters to these men indicated that BNSF would even assist them in

17  transferring crafts to qualify for the position, and a copy of the letters were sent to

18  their attorney, who is coincidentally the same attorney representing Vincent. ECF

19  No. 161-7.  Albeit slight, this evidence is sufficient to raise a genuine issue of

20  material fact as to whether the decision not to offer Vincent the van driver job was

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 28

pretextual, and to preclude finding for BNSF as a matter of law.  Issues remain for trial.

## C. Retaliation

Vincent alleges that BNSF failed to offer her the van driver job in retaliation for requesting reasonable accommodation and initiating a complaint against BNSF. In order to establish a prima facie case of retaliation under the ADA, an employee must show that (1) she engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *see also Becker v. Wash. State Univ.*, 165 Wash. App. 235, 250 (2011).  The Ninth Circuit has held that an employment action is "cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activities."  *Id.* at 1243; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (defining an adverse action as one "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'").  A causal link can be inferred from circumstantial evidence, such as the temporal proximity between the protected activity and the employment decision, and whether the employer knew that the employee engaged in protected activities. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  When analyzing a retaliation claim,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 29

the court must apply the same *McDonnell Douglas* burden shifting analysis used to evaluate Title VII discrimination claims. *See Barnett*, 228 F.3d at 1121. Thus, if the plaintiff establishes a prima facie case, the burden of production shifts back to the defendant to articulate a legitimate, nondiscriminatory reason for the action taken. *See Ramirez v. Olympic Health Mgmt. Sys., Inc.*, 610 F.Supp. 2d 1266, 1284 (E.D. Wash. 2009). If defendant states a valid reason, the burden shifts back to the plaintiff to demonstrate that the reason was merely pretext for a discriminatory motive. *Id.*

As an initial matter, BNSF concedes that Vincent presents sufficient evidence that she engaged in a protected activity. However, BNSF argues that Vincent cannot establish a prima facie case because she fails to present evidence of adverse unemployment action, or a causal link. Again, BNSF reasserts its argument that Vincent declined a job offer to be an Inspection Officer and therefore cannot claim a failure to extend her job opportunities. Vincent summarily responds that the failure to provide her with job opportunities that BNSF was extending to others was materially adverse because it could have dissuaded a reasonable person from pursuing a charge of discrimination; and refers the Court to the causal links offered in support of her ADA discrimination claim *supra*.

1    As the Court indicated above, the failure to extend this job opportunity when

2   she had previously expressed interest in the job, is sufficient to establish the prima

3   facie element of an adverse employment action.  Neither party analyzes or refers

4   the Court to specific portions of the record to establish the "temporal" nature of the

5   causal link, which appears to show a close temporal connection.  Vincent's FELA

6   trial occurred in May 2009, she sent a letter dated May 28, 2009 asking for

7   accommodations for her disability and to allow her to return to work, her request

8   for a van driver position occurred on August 10, 2009, she filed her EEOC

9   complaint in 2009 and a reasonable cause determination was issued April 30, 2010.

10  There appears to be ample evidence of close temporal proximity. [8]

11   In light of the evidence offered by Vincent that BNSF knew about her

12  protected activity, and took an adverse employment action by refusing to hire her,

13  a prima facie case has been established. Because BNSF fails to offer any legitimate

14  non-discriminatory reason for failing to offer Vincent the van driver position, it is

15  not necessary for the Court to address the additional steps in the *McDonnell*

16  *Douglas* burden shifting analysis.  It is worth noting, however, that BNSF's

17  perfunctory contention that Vincent cannot present evidence of pretext is

18  unpersuasive.  As indicated above, the Court finds genuine issues of material fact

---

[8] BNSF's argument that it offered her the Inspection Officer position back in 2006 is irrelevant because it was 3 years earlier.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 31

1   exist as to whether there was a causal link between the protected activity engaged

2   in by Vincent, and the alleged adverse employment action.  Like the sex

3   discrimination claim supra, the competing evidence does not warrant summary

4   judgment.

5   **D. Mitigation of Damages**

6       BNSF also argues that Vincent failed to mitigate her damages as a matter of

7   law when she completely stopped seeking other employment in January 2010.  The

8   defendant bears the burden of establishing a plaintiff's failure to mitigate damages.

9   *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995).  Thus, in order

10  to prevail on a summary judgment motion for failure to mitigate damages,

11  defendant must prove "based on undisputed facts in the record, during the time in

12  question there were substantially equivalent jobs available, which [plaintiff] could

13  have obtained, *and* that [plaintiff] failed to use reasonable diligence in seeking

14  one." *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 906 (9th Cir. 1994) (emphasis in

15  original); *see also Sias v. City Demonstration Agency*, 588 F.2d 692, 696-97 (9th

16  Cir. 1978).

17      BNSF contends that the fact that Vincent applied for many positions and

18  turned down one job offer is sufficient to establish that suitable positions were

19  available.  ECF No. 171 at 12.  The Court finds this circular argument

20  unpersuasive. The mere fact that Vincent fulfilled her duty to attempt to mitigate

her damages by applying for jobs, and even the fact that she was actually offered a job, is not enough to unequivocally show that these jobs were "substantially equivalent" to the position she previously held at BNSF.  Because the test is conjunctive, this finding alone is enough to preclude summary judgment in favor of BNSF.

As to whether her efforts were reasonably diligent, the Court looks only to efforts made after January of 2010, the time period put at issue by BNSF.  BNSF argues that Vincent herself testified that she stopped aggressively pursuing employment outside BNSF by the end of 2009 and has not submitted any applications for jobs since January 2010.  ECF No. 106-1 at 42.  Vincent responds that she has looked online for postings 3 times since January, registered with the State Job Service, worked with a vocational counselor, and read want ads.  *Id.*; Vincent Aff., ECF No. 186 at ¶¶ 14-18.  Vincent also testified that she preferred to remain at BNSF and despite difficulty accessing the BNSF online system for job applications,[9] she did write at least one letter to BNSF expressing interest in a job opening after January 2010.  *Id.* at ¶¶ 40, 42.  Vincent's vocational counselor also

---

[9] Vincent testified that she could not access the BNSF website to submit job applications using her own ID and password; and relied on help from friends who keep her informed on what positions are coming available at BNSF. ECF No. 106-1 at 39-41.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 33

attempted to contact BNSF, but received no reply. *Id.* at ¶ 16. Last, BNSF has not offered evidence of a suitable job available after January 2010 that Vincent should have discovered through reasonable diligence.

Albeit slight, the Court finds there is sufficient evidence to create a triable issue of fact as to whether Vincent's efforts to mitigate her damages after January 2010 were reasonable and diligent. Moreover, as indicated above, BNSF offers no *undisputed* evidence that there were substantially equivalent jobs available that Plaintiff could have obtained. Thus, in the light most favorable to Vincent, and at this stage of the proceeding, the Court finds there are genuine issues of fact as to whether, and at what point in time, Vincent failed to mitigate her damages. Summary judgment is denied.

**E. Washington State Law Claims**

1. Negligent Infliction of Emotional Distress

Negligent infliction of emotional distress can be divided into two causes of action: (1) direct action and (2) actions brought by bystanders who experience distress as a result of injury to others. *Bishop v. State*, Wash. App. 228, 233 n.4 (1995). As with any other negligence claim, the plaintiff must prove duty, breach, proximate cause, and damage or injury. *See Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wash.2d 233, 243 (2001). However, "there is no duty for an employer to provide employees with a stress free workplace." *Id.* Thus, "negligent infliction

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 34

of emotional distress may be a cognizable claim when it does not result from an

employer's disciplinary acts or its response to a workplace 'personality dispute.'"

*Strong v. Terrell*, 147 Wash. App. 376, 387 (2008).  A defendant owes a duty only

to those who are foreseeably endangered by the conduct and only as to those risks

or hazards whose likelihood made the conduct unreasonably dangerous.  *Snyder*,

145 Wash.2d at 245 ("[c]onduct is unreasonably dangerous when its risks

outweigh its utility.").  In order to establish proximate cause, plaintiff must prove

that the negligent conduct caused the injury in a direct sequence, with no

intervening independent cause.  *Strong*, 147 Wash. App. at 388.  Finally, to

establish a negligent infliction of emotional distress claim, the plaintiff must prove

that she has suffered emotional distress by "objective symptomatology" and the

"emotional distress must be susceptible to medical diagnosis and proved through

medical evidence." *Hegel v. McMahon*, 136 Wash.2d 122, 135 (1998) (symptoms

must constitute a diagnosable emotional disorder).

BNSF argues that Vincent presents no evidence of what BNSF's duty was in

this case, how it was breached, or how the action proximately caused harm.  ECF

No. 171 at 14.  Additionally, BNSF contends that Vincent presents no evidence of

a medical diagnosis or evidence of objective symptoms.  *Id*.  The Court agrees.

Vincent offers no evidence to show genuine issues of material fact that there was a

duty owed, a breach of that duty, proximate cause, or medical evidence of a

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 35

1   diagnosable medical disorder.  Rather, Vincent merely accuses BNSF of not

2   upholding its initial responsibility to present facts to show there is no genuine issue

3   as to any of these elements. This type of conclusory allegation is not sufficient to

4   withstand a motion for summary judgment.

5       As to the medical diagnosis, Vincent only offers her own testimony that she

6   has seen a counselor for three or four years, and that she has experienced

7   depression and anxiety.  ECF No. 106-1 at 43. However, Vincent offers no medical

8   evidence of any kind. Moreover, the testimony cited by Vincent refers to

9   depression and anxiety from the limitations on her lifestyle caused by the arm

10  injury (i.e. not playing with her grandchildren in the same way), and stress from

11  financial worries.  ECF No. 106-1 at 43.  There is no indication that this emotional

12  distress was caused by the accommodation process, although Vincent does testify

13  that it hurts her and makes her feel bad that BNSF "won't work with [her] and

14  won't help [her]."  *Id*. at 44.  This testimony is simply not enough to find a genuine

15  issue of material fact as to whether the Vincent was suffering from medically

16  diagnosable emotional distress proved through medical evidence.  Thus, even in

17  the light most favorable to Vincent the Court finds that no reasonable jury (fact

18  finder) could find for Vincent on the negligent infliction of emotional distress

19  claim.

20       2.  Intentional Infliction of Emotional Distress

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 36

To prove a claim of intentional infliction of emotional distress ("outrage"),

the plaintiff must show

> (1) extreme and outrageous conduct, (2) intentional or reckless infliction of
> emotional distress, and (3) actual result to the plaintiff of severe emotional
> distress. The conduct in question must be '*so outrageous in character, and
> so extreme in degree, as to go beyond all possible bounds of decency, and to
> be regarded as atrocious, and utterly intolerable in a civilized community*.'
> The question of whether certain conduct is sufficiently outrageous is
> ordinarily for the jury, but it is initially for the court to determine if
> reasonable minds could differ on whether the conduct was sufficiently
> extreme to result in liability

*Dicomes v. State*, 113 Wash.2d 612, 630 (1989) (emphasis in original) (internal

citations omitted); *see also Reid v. Pierce County*, 136 Wash.2d 195, 201-202

(1998) (defining outrageous conduct as that "which the recitation of the facts to an

average member of the community would arouse his resentment against the actor

and lead him to exclaim 'Outrageous!'").  Factors the Court may consider in

determining whether the conduct is sufficiently outrageous include: the position

occupied by defendant; whether the plaintiff was particularly susceptible to

emotional distress and if defendant knew that fact; the degree of the severity of the

emotional distress as opposed to annoyance, inconvenience or embarrassment; and

"the actor must be aware that there is a high probability that his conduct will cause

severe emotional distress and he must proceed in a conscious disregard of it."

*Phillips v. Hardwick*, 29 Wash. App. 382, 388 (1981).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 37

1  BNSF asserts that there is no evidence to establish any of the three elements

2  of the tort of intentional infliction of emotional distress. ECF No. 171 at 15.

3  Vincent responds that the jobs offered as accommodations to injured employees

4  are not offered in good faith but rather to reduce the value of their injury claims

5  and litigation costs to BNSF. ECF No. 176 at 16.  In Vincent's case, she claims

6  that the medical management team stopped working with her requests for

7  accommodation and forwarded them to corporate legal counsel after Vincent's

8  FELA trial, even though they are supposed to remain her advocates.  *Id*.  Vincent

9  asserts that this failure to advocate for her return to work was in violation of

10  BNSF's "ethical obligation" to assist her in returning to work.  She also argues that

11  BNSF improperly relies on individual employees to work within their knowledge

12  and ethical guidelines instead of publishing written procedures or providing

13  oversight from outside the department.  Last, Vincent claims that BNSF workers

14  are not advised of potential conflicts of interest.[10]

15  [10] Counsel refers to two alleged "conflicts of interest." The first relies on testimony

16  by a BNSF official and alleges that medical case managers encouraged others to

17  testify adversely to the employee.  This is a complete misstatement of the cited

18  testimony that merely indicates an employee testifying under a subpoena may

19  testify either in favor of or adversely to an employee. ECF No. 177-11 at 0169-

20  0172.  Counsel similarly claims that a medical case manager's bonus is calculated

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 38

Based on the record before the Court, the allegedly outrageous conduct by BNSF simply does not rise to a level so extreme and beyond all bounds of decency to be regarded as "atrocious" or "intolerable." *See Dicomes*, 113 Wash.2d at 630. The only *Phillips* factor that weighs even slightly in favor of a finding of outrageous behavior is the fact that Vincent was an employee of BNSF and therefore in a relatively subordinate position. However, Vincent does not offer any evidence that she was particularly susceptible to emotional distress and that BNSF knew that fact, nor does she show a genuine issue of material fact as to whether the actions by BNSF officials were taken in "conscious disregard" of the high probability that the conduct would cause severe emotional distress. *See Phillips*, 29 Wash. App. at 388. The Court similarly finds no evidence that the degree of the severity of the emotional distress was more than inconvenience or annoyance. *Id*.

---

in part based on the number of days lost before an employee returns from a personal injury. ECF No. 177-2 at 71-72. The record does not bear out this alleged conflict. The question (which was not answered) assumed the bonus would be higher with <u>lower</u> lost work days, i.e., back to work sooner rather than later. Thus, rather than presenting a conflict, the employee's and the medical case manager's interests are aligned.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 39

As opposed to negligent infliction of emotional distress claims, it is not necessary to plead bodily harm or "objective symptomatology."  *See Brower v. Ackerley*, 88 Wash. App. 87, 99-100 (1997). However, Vincent points to no facts in the record to establish that the allegedly outrageous actions taken by BNSF actually resulted in any severe emotional distress by Vincent.  While the facts alleged by Vincent, if proven true, may constitute bad faith actions by BNSF, the Court finds that reasonable minds could not differ that the conduct was not sufficiently extreme to result in liability.  *See Dicomes*, 113 Wash.2d at 630.

### 3.  Breach of Implied Covenant of Good Faith

Generally, an employment contract with indefinite duration is terminable at will by the employee or the employer.  *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 223 (1984).  Washington courts have declined to broadly adopt an implied covenant of good faith and fair dealing in an at will employment relationship.  *See Trimble v. Wash. State Univ.*, 140 Wash.2d 88, 97 (2000); *see also Thompson*, 102 Wash.2d at 227 (declining to adopt a broad "bad faith" exception to at-will employment which would imply a covenant of good faith and fair dealing into every employment contract).  "However, under some egregious circumstances an implied covenant of good faith may be appropriate."  *Trimble*, 140 Wash.2d at 97.

1        Vincent argues that an "egregious circumstance" includes the lack of a good

2   faith exchange of information when BNSF offered the Inspection Officer position

3   as a reasonable accommodation.  ECF No. 160 at 19.  In support of this argument

4   Vincent cites to *Frisino v. Seattle School Dist. No.1* wherein the court found that "a

5   good faith exchange of information between parties is required whether the

6   employer chooses to transfer the employee to a new position or to accommodate

7   the employee in the current position." 160 Wash. App. 765, 780 (2011).  However,

8   the cited portion of *Frisino* only addresses a failure to accommodate claim under

9   the WLAD.  At no time in this decision does the court analyze an implied covenant

10  of good faith and fair dealing cause of action, much less hold that an alleged failure

11  to act in good faith when attempting to accommodate the disability of an injured

12  worker translates to an "egregious circumstance."

13       As indicated above, the Court agrees that there is a genuine issue of fact as

14  to whether BNSF engaged in a good faith exchange of information about the

15  Inspection Officer position.  However, that finding was only in the context of a

16  failure to accommodate claim under the ADA and WLAD.  The Court finds no

17  support in Washington law for the suggestion that a failure to communicate in

18  good faith about a reasonable accommodation rises to the level of "egregious

19  circumstance" in a breach of implied covenant of good faith and fair dealing claim.

20  As this is the only argument asserted by Vincent in support of this cause of action,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 41

the Court finds no legal or factual support for a claim of breach of implied covenant of good faith and fair dealing. Summary judgment is granted.

### 4. Wrongful Failure to Hire

BNSF argues that there is no recognized action for "wrongful failure to hire" under Washington law. Vincent offers no response to this argument. Absent any statutory or case law to support this claim, and in light of the complete lack of evidence showing any genuine issues of material fact, the Court grants summary judgment on this claim in favor of BNSF.

## F. Punitive Damages

As an initial matter the Court emphasizes that punitive damages are excluded in cases brought under the WLAD. *See Martini v. Boeing Co.*, 137 Wash.2d 357, 368 (1999). In direct contrast to the argument asserted by Vincent, Washington courts have expressly concluded that the WLAD's language indicating that available remedies include "any other remedy authorized by this chapter or the United States Civil Rights Act of 1964" does not extend to punitive damages. Wash. Rev. Code § 49.60.030(2); *see e.g., Dailey v. N. Coast Life Ins. Co.*, 129 Wash.2d 572, 575 (1996). In order to recover punitive damages on its federal claims, Vincent must prove that BNSF intentionally "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(a)(2),

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 42

(b)(1); *see also Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) ("terms 'malice' and 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.").

An employer may be liable for punitive damages when it "discriminate[s] in the face of a perceived risk that its actions will violate federal law." *Kolstad*, 527 U.S. at 536; *see also Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 515 (9th Cir. 2000) (acknowledging some instances where intentional discrimination would not give rise to punitive damages such as when the employer is aware of the specific discriminatory conduct at issue, but nonetheless reasonably believed that the conduct was lawful).  However, the Supreme Court has held that in the punitive damages context, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good faith efforts to comply with Title VII.'" *Kolstad*, 527 U.S. at 545.

BNSF argues that Vincent cannot prove malice or reckless indifference to Vincent's rights sufficient to present a claim for punitive damages to a jury, and that the record does not provide any evidence of BNSF's state of mind.  Vincent responds that the evidence of pretext (see supra) for why it offered jobs to males but not Vincent is evidence of "intentional trickery and deceit."  ECF No. 176 at

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 43

18.  In addition, Vincent argues that BNSF disregarded the safety of its employees by not looking into whether an employee could perform the essential functions of a job.  Vincent also contends that BNSF's medical management team intentionally failed to advocate and collaborate with her "in the face of [Vincent's] financial vulnerability."  *Id*. at 19.  She alleges that BNSF deliberately did not put its policies and procedures into written form to keep the process subject to manipulation, and also allowed for alleged "discriminatory acts against Ms. Vincent that were approved by higher officials."  *Id*.  Vincent also argues that one particular BNSF employee made snide remarks about her injury, and that she was targeted with unwarranted attendance violations for doctor's appointments. ECF No. 106-1 at 13-16.

Examining the facts in the light most favorable to Vincent, the Court fails to discern substantial evidence (more than a mere scintilla) that rises to the level of malice or reckless indifference to Plaintiff's <u>federally protected rights</u>.  Thus, summary judgment will be granted on this issue.

**G. Affidavits of Mindy Owen, John Banja, and Karen Black**

BNSF's sur-reply asks the Court to strike the affidavits of Mindy Owen (ECF No. 181), John Banja (ECF No. 178), and Karen Black (ECF No. 179) because they give an opinion on the ultimate issue of law.  Karen Black is Vincent's vocational counselor and her affidavit has no central relevance to the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 44

Court's decision.  Owen and Banja's affidavits primarily address the intentional

infliction of emotional distress claim and the punitive damages issue.  Both present

"expert testimony" on the ethical responsibilities of BNSF and Ms. Stevens.  The

Court does not find them particularly relevant or helpful to its determination of the

relevant law.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

    1.  Defendant's Motion for Summary Judgment (ECF No. 104), is

**GRANTED** in part and **DENIED** in part.  Defendant's Motion for Summary

Judgment is **GRANTED** concerning Plaintiff's state law claims for negligent

infliction of emotional distress, intentional infliction of emotional distress, breach

of implied covenant of good faith, wrongful failure to hire and Plaintiff's claim for

punitive damages.  As indicated herein, Defendant's motion is **DENIED** with

respect to all other claims.

    The District Court Executive is hereby directed to enter this Order and

provide copies to counsel.

    **DATED** this 27th day of November, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 45